# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2012AP1307-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent-Petitioner, |
| |     v. |
| | Jeremiah J. Purtell, |
| |         Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
347 Wis. 2d 550, 830 N.W.2d 723
(Ct. App. 2013 – Unpublished)

| | |
|---|---|
| OPINION FILED: | August 1, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 5, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Washington |
|   JUDGE: | James K. Muehlbauer |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | BRADLEY, J., ABRAHAMSON, C.J., dissent. (Opinion filed.) |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondent-petitioner, the cause was argued by *Sandra L. Tarver*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the defendant-appellant, the cause was argued by *Ellen J. Krah*n, assistant state public defender, with whom on the brief was *Eileen A. Hirsch*, assistant state public defender.

**2014 WI 101**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP1307-CR
(L.C. No. 2010CF86)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

Plaintiff-Respondent-Petitioner,

v.

Jeremiah J. Purtell,

Defendant-Appellant.

**FILED**

**AUG 1, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 MICHAEL J. GABLEMAN, J. This is a review of an unpublished decision of the court of appeals[1] that reversed the judgment of the Washington County Circuit Court[2] convicting Jeremiah Purtell of four counts of possession of child pornography, contrary to Wis. Stat. § 948.12(1m) (2009-10).[3] The court of appeals held that the circuit court erred in denying Purtell's motion to suppress evidence seized from a warrantless

---

[1] State v. Purtell, No. 2012AP1307-CR, unpublished slip op. (Wis. Ct. App. Mar. 7, 2013).

[2] The Honorable James K. Muehlbauer presided.

[3] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

search of his personal computer. In denying Purtell's motion to suppress, the circuit court reasoned that the probation agent's search of Purtell's computer complied with Wis. Admin. Code § DOC 328.21(3)(a) (Dec. 2006)[4] because she had reasonable grounds to believe the computer, which Purtell knowingly possessed in violation of the terms of his probation, contained contraband. The court of appeals concluded that the probation agent improperly searched the computer under the mistaken understanding that Purtell possessed images that violated the terms of his probation. Because the images were not prohibited under the terms of Purtell's probation or otherwise illegal to possess, the court of appeals held the probation agent lacked reasonable grounds to search the computer.

¶2 The question presented in this case is whether the warrantless probation search of Purtell's computer violated his constitutional rights under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution.

¶3 We hold the circuit court properly denied Purtell's motion to suppress. A probation agent's search of a probationer's property satisfies the reasonableness requirement of the Fourth Amendment if the probation agent has "reasonable grounds" to believe the probationer's property contains

---

[4] Effective July 1, 2013, Wis. Admin. Code § DOC 328 was repealed and recreated. All subsequent citations to the Wisconsin Administrative Code will be to the 2006 version, which was the version in effect at the time of the search of Purtell's computer on April 9, 2007.

contraband. <u>Griffin v. Wisconsin</u>, 483 U.S. 868, 872 (1987). The record demonstrates that the probation agent had reasonable grounds to believe Purtell's computer, which Purtell knowingly possessed in violation of the conditions of his probation, contained contraband. Accordingly, we hold the probation search of the contents of Purtell's computer did not violate the Fourth Amendment to the United States Constitution or Article I, Section 11 of the Wisconsin Constitution and reverse the decision of the court of appeals.

## I. BACKGROUND

¶4 The material facts underlying this appeal stem from events occurring in November 2006, when Jeremiah J. Purtell pled guilty to two felony counts of mistreating animals in a cruel manner, contrary to Wis. Stat. § 951.02 (2005-06). This 2006 guilty plea arose from events that transpired after Purtell began dating a veterinary technician who he met through Myspace, a social-networking website. After a few weeks of dating, Purtell moved into the technician's apartment which she shared with her two dogs, a Shetland sheepdog and a Scottish terrier. Over the next several weeks, Purtell tortured her two dogs, piercing their eyes with a needle, repeatedly throwing them against a wall, and holding them by their necks. He also struck the Scottish terrier with a pipe and cut the Shetland sheepdog several times with scissors. Purtell later admitted to strangling the Scottish terrier to death. During the investigation into the animal abuse charges, the Madison Police Department examined Purtell's computer and found over thirty

3

images depicting bestiality, including sex acts between women and either dogs or horses.

¶5 On March 28, 2007, the Dane County Circuit Court[5] withheld sentence, placed Purtell on 48 months of probation, and imposed but stayed a sentence of 5 months and 29 days. For purposes of his probation, Purtell's supervision was transferred from Dane to Washington County and his case was assigned to Probation Agent Kristine Anderson ("Agent Anderson"), who had a specialty caseload of probationers with animal abuse backgrounds.

¶6 Agent Anderson met with Purtell for his intake appointment on April 6, 2007. At this time, Agent Anderson reviewed with Purtell his judgment of conviction, the general rules of community supervision,[6] and the conditions she was imposing that were supplemental to those imposed by the court.[7]

---

[5] The Honorable James Martin presided.

[6] "Probation, parole and extended supervision all involve persons under community supervision." State v. Rowan, 2012 WI 60, ¶10, 341 Wis. 2d 281, 814 N.W.2d 854. The conditions of community supervision are enumerated in a form entitled "Rules of Community Supervision," which provides a standardized list of rules issued by the Department of Corrections that individuals under community supervision must follow in addition to any other court-ordered conditions.

[7] Probation agents have the authority to establish rules of probation that are supplemental to court-imposed conditions. Wis. Admin. Code, § DOC 328.04(2)(d). The Rules of Community Supervision require the probationer to "follow any specific rules that may be issued by an agent to achieve the goals and objectives of your supervision. The rules may be modified at any time, as appropriate."

4

Purtell objected to several of these supplemental conditions, including the stipulation he "not purchase, possess, nor use a computer, software, hardware, nor a modem without prior agent approval."[8] Beyond the condition concerning computers, Agent Anderson imposed several other rules based on her knowledge of his criminal history. Because his underlying conviction related to animal cruelty and originated from using Myspace to meet the veterinarian technician whose dogs he had tortured, Purtell was "prohibited from maintaining a Myspace.com account" and from having any contact with animals. Additionally, Purtell's presentence investigation report[9] informed Agent Anderson that he had a preoccupation with internet pornography and befriending and dating underage girls. Accordingly, Purtell was prohibited from having any unsupervised contact with children.

---

[8] This condition supplemented a condition that had already been imposed by the circuit court which provided, as a condition of Purtell's probation, he was "not to own or possess a computer," but that he could use a computer "at his place of business or school only."

[9] The Dane County Circuit Court ordered a presentence investigation report in 2006 after Purtell pled guilty to the two counts of animal cruelty discussed above. While this report is not in the record, a second presentence investigation report was ordered by the Washington County Circuit Court after Purtell was convicted by jury trial in September 2011 of four counts of possessing child pornography. This 2011 report, which is in the record, references the 2006 report that Agent Anderson relied upon in assessing Purtell's treatment needs. "The primary purpose of the presentence investigation report is to provide the sentencing court with accurate and relevant information upon which to base its sentencing decision." Wis. Admin. Code § DOC 328.27(1). However, it also serves a helpful role for the probation agent in "determining levels of supervision, classification, program assignment . . . decision making[,] and in the overall correctional treatment" of the probationer. Id.

¶7 During the intake meeting, Purtell disclosed to Agent Anderson that he had a Myspace account. Agent Anderson reviewed Purtell's Myspace page. On the opening page there was an animated video of a bull with audible sound declaring "the internet is for porn." At the end of the video was a cartoon illustration of a man standing behind a cow. In front of the cow was an equal sign and an image of a half cow/half man character. Agent Anderson also observed a blog post on his Myspace page titled, "oops . . . I did it again," which indicated Purtell was pursuing a relationship with his friend's fifteen-year-old sister. Purtell was directed to close his Myspace account by the end of the day.

¶8 Purtell continued to object to the supplemental conditions and stated he would not remove his computers unless the circuit court judge ordered him to do so. Agent Anderson requested her supervisor, Correctional Field Supervisor Chad Frey ("CFS Frey"), to join the meeting and reinforce the need for the supplemental conditions. CFS Frey informed Purtell that he had a right to correspond with the circuit court and his attorney regarding his objections, but clarified that until the circuit court ordered differently, Purtell was expected to comply with all of the rules of his probation, including those imposed by Agent Anderson.

¶9 Purtell eventually relented and agreed to surrender the two computers in his possession—a laptop and desktop computer—to his father the next day, April 7.

6

¶10    Later in the afternoon on April 6, Bob Adams, the program coordinator of the group home where Purtell resided, contacted Agent Anderson and reported that Purtell had returned from the intake meeting very disgruntled and had skipped his appointment for mental health counseling.  Purtell told Adams he had no intention of complying with the conditions of his probation and would keep his computers and not close down his Myspace account.  Purtell explained to Adams he would simply hide his computers during scheduled home visits.[10]

¶11  On Monday, April 9, Adams called Agent Anderson and informed her that Purtell had not removed his computers from his room and had failed to report to the Washington County Jail to submit a DNA sample.  Further, Adams conveyed that Purtell had violated the group home's curfew on the evening of Saturday, April 7.   Agent Anderson responded that she planned to go to the group home with other probation agents and law enforcement officers to place Purtell in custody for failing to comply with the rules of his supervision.

¶12  Later in the morning on April 9, the probation officers did, indeed, take Purtell into custody.  Agent Anderson, with two other probation agents, searched Purtell's

---

[10] Depending on the level of supervision deemed most appropriate, a probation agent is typically required to make home visits to a probationer's home every 30 to 90 days.  See Wis. Admin. Code § DOC 328.04(4).  The level of supervision is generally based on the needs and risks of the probationer. § DOC 328.04(1).

room and confiscated, among other things, a laptop, desktop computer, other related computer equipment, and personal papers.

¶13 After going back to her office, Agent Anderson inventoried the items confiscated in the search and found among Purtell's personal papers a crayon-colored picture of a kitten with accompanying notes that, like his Myspace activity, suggested Purtell was attempting to engage in a relationship with his friend's fifteen-year-old sister.

¶14 Agent Anderson then searched one of Purtell's computers without a warrant.[11] When she turned on the computer, several titles to images popped up on the screen that involved females engaged in sexual activity with animals and images of what appeared to be underage females. Agent Anderson notified her supervisor, CFS Frey, of the images she had found on Purtell's computer. They contacted local law enforcement officials, who subsequently obtained two search warrants which allowed them to search Purtell's computer equipment, including the hard drives of his laptop and desktop computers.[12] The resulting search revealed several still images and videos of

---

[11] The circuit court noted in its findings of fact that there was conflicting testimony regarding which computer was searched by Agent Anderson. Agent Anderson testified she searched the laptop, while a police detective testified it was the desktop computer. Regardless of whose recollection was correct, there is no dispute one of the computers was searched and that several images of what appeared to be child pornography were found.

[12] Washington County Circuit Court, the Honorable Andrew T. Gonring presided.

8

children engaged in sex acts.  On March 19, 2010, based on the evidence acquired through the search of Purtell's computers, Purtell was charged with eight counts  of possession of child pornography, contrary to Wis. Stat. § 948.12(1m).

¶15 Purtell moved to suppress the evidence seized from the computers, arguing that the evidence was obtained in violation of his Fourth Amendment rights.[13]  Purtell conceded that Agent Anderson had "reasonable grounds"[14] to search Purtell's room to ascertain whether he had complied with the conditions of his probation, and that Agent Anderson lawfully seized his computers due to his non-compliance.  However, Purtell argued that Agent Anderson exceeded the permissible scope of that search by searching the contents of his computer.  According to Purtell, Agent Anderson lacked both a warrant and reasonable grounds to conduct the search, and the evidence subsequently seized should therefore be suppressed.

¶16 The Washington County Circuit Court denied Purtell's motion to suppress, concluding the search was justified because there were reasonable grounds to believe the computer contained

---

[13] Purtell's motion to suppress raised a second argument in the alternative.  Purtell argued that if the circuit court determined Agent Anderson did have reasonable grounds to search the computer's contents, the evidence should still be suppressed because a police detective had improperly viewed and catalogued the evidence before obtaining a search warrant.  This issue has not been raised on appeal.

[14] Wisconsin probation regulations permit a probation agent to search a probationer's property "if there are reasonable grounds to believe that the quarters or property contain contraband . . . ."  Wis. Admin. Code § DOC 328.21(3)(a).

contraband.[15] On September 1, 2011, Purtell was found guilty by jury trial of four counts of possession of child pornography.

¶17 Purtell appealed from the judgment of conviction and order denying his motion to suppress. The court of appeals reversed the judgment of conviction, concluding that Agent Anderson did not have reasonable grounds to believe Purtell's computers contained contraband. State v. Purtell, No. 2012AP1307-CR, unpublished slip op., ¶14 (Wis. Ct. App. Mar. 7, 2013). The court reasoned that the State's argument centered "on the faulty assumption that Purtell's probation conditions prohibited him from possessing images depicting cruelty to animals or the mutilation of animals." Id. Because images depicting animal cruelty or mutilation were not prohibited under Purtell's rules of probation, and were not otherwise illegal, there was no basis on which "to affirm the circuit court's denial of Purtell's suppression motion." Id.

¶18 The State petitioned this court for review, which we granted on November 20, 2013.

## II. STANDARD OF REVIEW

¶19 This case requires us to address whether the warrantless search of Purtell's computer by his probation

---

[15] "Contraband" is defined in the Wisconsin Administrative Code as "[a]ny item which the client may not possess under the rules or conditions of the client's supervision," Wis. Admin. Code § DOC 328.16(1)(a), or "any item whose possession is forbidden by law." § DOC 328.16(1)(b).

officer violated his Fourth Amendment rights.[16] Whether evidence should have been suppressed as the result of a Fourth Amendment violation is a mixed question of law and fact. We take the circuit court's findings of fact as true unless clearly erroneous, and "our application of constitutional principles to those facts is de novo." State v. Sobczak, 2013 WI 52, ¶9, 347 Wis. 2d 724, 833 N.W.2d 59.

### III. DISCUSSION

¶20 The question before this court is whether Purtell's Fourth Amendment rights were violated when his probation officer searched the contents of his computer.[17] The State argues that

---

[16] Purtell challenges the search of his computer under both the United States and Wisconsin Constitutions. This court has ordinarily interpreted the protections of the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution as coextensive. State v. Artic, 2010 WI 83, ¶28, 327 Wis. 2d 392, 786 N.W.2d 430 (citing State v. Johnson, 2007 WI 32, ¶20, 299 Wis. 2d 675, 729 N.W.2d 182). For the sake of efficiency, this opinion will expressly address only Purtell's Fourth Amendment challenge, but we note our analysis applies to Article I, Section 11 of the Wisconsin Constitution as well.

[17] Purtell argues that this issue is not properly before this court because the constitutionality of the search was not raised by the State in its petition for review. See Motion to Strike State's Brief Because It Addresses An Issue Not Raised In Its Petition For Review (Motion to Strike), filed Dec. 20, 2013. In our order granting the State's petition for review, we stated, "the plaintiff-respondent-petitioner may not raise or argue issues set forth in the petition for review unless otherwise ordered by this court."

11

the probation officer had reasonable grounds to believe the contents of Purtell's computers contained contraband because the computers themselves were contraband under the conditions of his probation.  We conclude that the record demonstrates Agent Anderson had reasonable grounds to believe the computers contained contraband and, accordingly, hold the circuit court properly denied Purtell's motion to suppress.

a. Fourth Amendment Principles in the Context of

Probation

¶21 The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.  "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."  United States v. Jacobsen, 466 U.S. 109, 113 (1984).  "The touchstone of the Fourth Amendment is reasonableness," United States v. Knights, 534 U.S. 112, 118

---

Once this court has accepted review of a case, however, it is within our "discretion to review any substantial and compelling issue the case presents." Chevron Chem. Co. v. Deloitte & Touche, 176 Wis. 2d 935, 945, 501 N.W.2d 15 (1993). Whether the search of Purtell's computer satisfied the reasonableness requirement of the Fourth Amendment is a substantial issue that is dispositive to the question of whether the circuit court's denial of Purtell's suppression motion was proper.  Further, the question of whether Agent Anderson had reasonable grounds to believe that Purtell's computer contained contraband has been thoroughly argued and briefed by the parties at every stage of litigation in this case.  Therefore, we find it is appropriate to reach the underlying merits presented and consider whether the search of Purtell's computer violated his Fourth Amendment rights.

(2001), and the reasonableness of any search is considered in the context of the individual's legitimate expectations of privacy. Maryland v. King, 567 U.S. ___, 133 S. Ct. 1958, 1978 (2013).

¶22 Here, a Fourth Amendment challenge is being made by a probationer. The Fourth Amendment affords protection only against searches that are unreasonable, and what is unreasonable for a probationer differs from what is unreasonable for a law-abiding citizen. Law-abiding citizens are entitled to the full panoply of rights and protections provided under the Fourth Amendment. Conversely, citizens convicted of a crime and incarcerated have had their privacy interests largely "extinguished by the judgments placing them in custody." Banks v. United States, 490 F.3d 1178, 1186 (10th Cir. 2007) (quoting Green v. Berge, 354 F.3d 675, 679 (7th Cir. 2004) (Easterbrook, J., concurring)); see also United States v. Huart, 735 F.3d 972, 975 (7th Cir. 2013) ("It is well settled that prisoners have no reasonable expectation of privacy in the belongings they keep with them."). Somewhere between these two extremes on the "privacy continuum," Banks, 490 F.3d at 1186, lies convicted felons placed on conditional release, such as probation or parole. Probationers are entitled to a certain degree of constitutional protection under the Fourth Amendment, but their rights against warrantless searches and seizures are significantly curtailed. See Samson v. California, 547 U.S. 843, 849-850 (2006) (noting that probationers "do not enjoy the absolute liberty to which every citizen is entitled," and that

probationers have "significantly diminished privacy interests") (internal quotation marks omitted).

¶23 This is so because, like incarceration, probation is "a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty." Griffin, 483 U.S. at 874. Wisconsin probationers are in the legal custody[18] of the Wisconsin Department of Corrections, where they are subject to the "control of the department under conditions set by the court and rules and regulations established by the department . . . ." Wis. Stat. § 973.10(1). Consequently, while law-abiding citizens enjoy the fundamental rights and liberty interests conferred by the constitution, probation has been characterized as a "conditional liberty [that is] properly dependent on observance of special [] restrictions." Morrissey v. Brewer, 408 U.S. 471, 480 (1972).

¶24 These special restrictions are vitally important to the State's effective administration of its probation system.

---

[18] Legal scholars have critiqued courts for deciding probation search cases under a "constructive custody" rationale, arguing that by stating in conclusory fashion a probationer is in "custody" while outside of prison, they create a legal fiction that ignores the numerous ways in which a probationer's life is far more akin to that of an ordinary citizen's than a prisoner's. See 4 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 10.10(a) (5th ed. 2012). To clarify, we do not use the term "legal custody" to equate the Fourth Amendment rights afforded to a probationer with those afforded a prisoner. Instead, we merely recognize probationers are in the "legal custody" of the State because, unlike ordinary citizens, they are still subject to State supervision to ensure successful reintegration into the community, lawful conduct, and public safety.

As the United States Supreme Court in <u>Griffin</u> explained, "A State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement . . . ." 483 U.S. at 873-74. The restrictions inherent in the probation system are necessary to "assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large[]"; these dual goals of rehabilitation and public safety "require and justify the exercise of supervision to assure that the restrictions are in fact observed." <u>Id.</u> at 875.

¶25 The background and criminal history of each probationer is different, and the individual's level of supervision and corresponding privacy interests will vary. It is the probation agent's responsibility to obtain necessary information about the probationer to provide appropriate supervision, evaluate their needs and security risks, determine their goals and objectives, and establish written supplemental rules of supervision. This flexibility assists in ensuring the "degree of impingement upon [a probationer's] privacy" is no greater than necessary to support rehabilitation and safeguard the community from potential harm. <u>Id.</u> This case-by-case approach means that probation "can itself be more or less confining depending upon the number and severity of restrictions imposed," and in certain circumstances, "the probation [agent] must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to

intervene before a probationer does damage to himself or society." Id. at 874, 879.

b. The Probation Agent Had Reasonable Grounds to Search Purtell's Computer.

¶26 Wisconsin probation regulations permit a probation agent to search a probationer's property "if there are reasonable grounds to believe that the quarters or property contain contraband . . . ." Wis. Admin. Code § DOC 328.21(3)(a). In Griffin v. Wisconsin, the United States Supreme Court upheld this regulation, concluding that it "satisfies the Fourth Amendment's reasonableness requirement under well-established principles." 483 U.S. at 873. Griffin held that the special needs of Wisconsin's probation system in effectively supervising probationers and protecting the community justified replacing the standard of probable cause with a lesser "reasonable grounds" standard. The Court reasoned that probation officers must be permitted "to respond quickly to evidence of misconduct" and "the deterrent effect that the possibility of expeditious searches" creates would be unduly compromised by a probable cause requirement. Id. at 876; see also Knights, 534 U.S. at 121 ("Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term 'probable cause,' a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable.").

¶27 Purtell does not challenge the search of his residence (a group home) or the seizure of his computers. He concedes

16

Agent Anderson had reasonable grounds to search his room and that his computers were "contraband" under the terms of his probation. Instead, Purtell argues that, while his computers were lawfully seized as contraband, Agent Anderson's search of the computer's contents constituted an independent, governmental search that violated his Fourth Amendment privacy interests. The court of appeals agreed, concluding that the State's argument rested on the faulty assumption that Purtell was prohibited from possessing images depicting cruelty to animals. Agent Anderson testified during the suppression hearing that she was concerned Purtell may have images depicting animal cruelty or mutilation on his computers. Because possessing images of animal cruelty was not prohibited under Purtell's conditions of probation, and were not otherwise illegal to possess,[19] the court of appeals concluded that Agent Anderson did not have "reasonable grounds" to believe Purtell's computer contained contraband. Purtell, No. 2012AP1307-CR, ¶14.

¶28 We disagree. As a threshold matter, it is difficult to imagine a scenario where a probation agent would lack reasonable grounds to search an item the probationer is explicitly prohibited from possessing. Indeed, the fact that the computers in question were themselves contraband is critical. Ordinary citizens, even citizens who are subject to diminished

---

[19] In United States v. Stevens, 559 U.S. 460, 482 (2010), the United States Supreme Court held that a federal statute prohibiting the creation, sale, or possession of depictions of animal cruelty violated the First Amendment.

17

privacy interests because they have been detained, have a legitimate expectation of privacy in the contents of their electronic devices. See Riley v. California, 134 S. Ct. 2473 (2014); State v. Carroll, 2010 WI 8, ¶27, 322 Wis. 2d 299, 778 N.W.2d 1. This privacy interest, however, is undercut when the electronic device in question is contraband.[20] See United States v. Skinner, 690 F.3d 772, 785 (6th Cir. 2012), cert. denied, 133 S. Ct. 2851 (2013) (observing that "courts have declined to recognize a 'legitimate' expectation of privacy in contraband and other items the possession of which are themselves illegal, such as drugs and stolen property.").

¶29 Thus, Purtell's expectation of privacy in his computers was diminished, not only because he was on probation, but because his possession and use of the computers was specifically prohibited by a condition of that probation.

---

[20] The dissent cites to several cases which stand for the proposition that the seizure of an electronic device is distinct from a subsequent search of its contents. Dissent, ¶¶41-48; see also Riley v. California, 134 S. Ct. 2473 (2014) (addressing the warrantless search of the contents of the defendant's cell phone following his arrest); State v. Sobczak, 2013 WI 52, 347 Wis. 2d 724, 833 N.W.2d 59 (discussing whether a third party's consent for law enforcement to search the defendant's home could validate the officer's subsequent search of the defendant's laptop); State v. Carroll, 2010 WI 8, 322 Wis. 2d 299, 778 N.W.2d 1 (reviewing the validity of a warrantless search of the contents of an arrestee's cell phone). Our case involves a probationer——who is already subject to diminished privacy interests——and the search of contraband that he knowingly possessed in violation of the terms of his probation. The cases cited by the dissent, while interesting, are of minimal assistance to our analysis.

18

¶30 Conditions of probation are imposed for a reason.[21] So, when a condition of probation prohibits the possession of a certain item, and the subject of the search knowingly breaks that condition, in most situations a probation agent would presumably have reasonable grounds to search the contents of the item.  Regardless, whether or not a probation agent would ever conceivably lack reasonable grounds to believe that contraband in a probationer's possession contains more contraband, it is certainly not a close question here.  The record shows that Agent Anderson had reasonable grounds to conduct a probation search of Purtell's computer based on the factors provided in the Wisconsin Administrative Code.

¶31  The Wisconsin Administrative Code sets forth a list of factors to be considered in determining whether there are reasonable grounds to believe a probationer's property contains contraband:

---

[21] To be constitutional, conditions must be designed to assist "the convicted individual in conforming his or her conduct to the law," and not be overly broad. Rowan, 341 Wis. 2d at ¶10. As we explained in Rowan,

> [a] condition is reasonably related to a person's rehabilitation if it assists the convicted individual in conforming his or her conduct to the law.  It is also appropriate for circuit courts to consider an end result of encouraging lawful conduct, and thus increased protection of the public, when determining what individualized probation . . . conditions are appropriate for a particular person.

Id. (citations and footnotes omitted). As previously noted, Purtell does not challenge the propriety of the condition that he not own, possess, or use a personal computer.

(a)     The observations of staff members.

(b)     Information provided by informants.

(c)     The reliability of the information provided by an informant. In evaluating the reliability of the information, the field staff shall give attention to the detail, consistency and corroboration of the information provided by the informant.

(d)     The reliability of the informant. In evaluating the informant's reliability, attention shall be given to whether the informant has supplied reliable information in the past and whether the informant has reason to supply inaccurate information.

(e)     The activity of the client that relates to whether the client might possess contraband or might have used or be under the influence of an intoxicating substance.

(f)     Information provided by the client that is relevant to whether the client has used, possesses or is under the influence of an intoxicating substance or possesses any other contraband.

(g)     The experience of a staff member with that client or in a similar circumstance.

(h)     Prior seizures of contraband from the client.

(i)     The need to verify compliance with the rules of supervision and state and federal law.

Wis. Admin. Code § DOC 328.21(7). As a condition of his probation, Purtell was "not [to] purchase, possess, <u>nor use</u> a computer, software, hardware, nor a modem without prior agent

approval."[22] (Emphasis added.) Here, Agent Anderson was justified in ascertaining the extent of Purtell's noncompliance with the rules of his supervision. Wis. Admin. Code § DOC 328.21(7)(i). It was already established that Purtell had knowingly violated the condition against possessing a computer, and it was unquestionably Agent Anderson's prerogative to ascertain whether he had further violated the conditions imposed on his probation by using those computers. It is irrelevant whether the images of animal cruelty were prohibited by Purtell's probationary terms or otherwise illegal to possess; the use of the computer was itself prohibited, and Agent Anderson had reasonable grounds to believe Purtell had impermissibly used them.

¶32 Further, it is apparent from Agent Anderson's testimony at the suppression hearing she considered several factors set forth in the Wisconsin Administrative Code——which probation agents are instructed to consider in determining whether a probationer's property contains contraband——in her decision to search Purtell's computer: (1) Purtell's Myspace page and personal papers indicated he was attempting to start a

---

[22] The court of appeals misstated Purtell's condition of probation as prohibiting him from "own[ing] or possess[ing] a computer and that he could only use a computer 'at his place of business or school.'" Purtell, No. 2012AP1307CR, ¶2. This condition, which was stated in Purtell's judgment of conviction, was originally imposed by the Dane County Circuit Court. Agent Anderson testified at the suppression hearing that, after Purtell was transferred to Washington County, the circuit court left it to her discretion whether the condition be modified or removed.

relationship with a fifteen-year-old girl, and Myspace is the same avenue he used to contact a prior victim.[23] Agent Anderson knew of Purtell's background befriending underage girls and had prohibited him from being in contact with children. She expressed concern that he may have other Myspace accounts or be using other networking sites, such as Facebook, where he would have access to other potential victims;[24] (2) Purtell's Myspace page had cartoon images of human/animal hybrids, which Agent Anderson——having an expertise in animal cruelty cases[25]——felt was a disturbing signal of potential future violence against, not just animals, but also people;[26] (3) Purtell did not attend his

---

[23] A factor that probation agents are instructed to consider in determining whether to search a probationer's property is "[t]he activity of the client that relates to whether the client might possess contraband . . . ." Wis. Admin. Code § DOC 328.21(7)(e).

[24] Two additional factors that probation agents are instructed to consider prior to conducting a search are "[t]he experience of a staff member with that client or in a similar circumstance," Wis. Admin. Code § DOC 328.21(7)(g), and "[t]he need to verify compliance with rules of supervision and state and federal law," Wis. Admin. Code § DOC 328.21(7)(i).

[25] Agent Anderson's expertise with animal cruelty cases corresponds to Wis. Admin. Code § DOC 328.21(7)(g), which lists "[t]he experience of a staff member with that client or in a similar circumstance," as a factor in determining whether reasonable grounds exist to search a probationer's belongings.

[26] The author of the 2006 presentence investigation report ordered by the Dane County Circuit Court expressed concern that Purtell viewed the two dogs he abused as "human," in that he believed the dogs could make a conscious decision to reject him.

22

scheduled mental health assessment, did not submit his court-ordered DNA sample, and failed to follow the residency rules of his group home by missing curfew;[27] and (4) Purtell displayed extreme reluctance to surrender his computers[28], and was even so bold as to inform the coordinator of his group home that he intended to hide them during home visits.[29] Taken in the aggregate, and given Purtell's blatant disregard for the conditions of his probation, as well as Agent Anderson's knowledge of Purtell's background and those of similar probationers, we conclude there were reasonable grounds for

---

Agent Anderson was also aware that Purtell's history of torturing animals stemmed back to childhood. She testified that she had spoken directly with Purtell's mother regarding Purtell's childhood, and was informed that Purtell, as a child, had "disciplined" a family pet and injured the animal to such a degree they never had animals in the home again.

[27] Purtell's conduct can be properly considered by Agent Anderson under Wis. Admin. Code § DOC 328.21(7)(e), describing "[t]he activity of the client that relates to whether the client might possess contraband" as a factor in determining whether reasonable grounds exist to justify a search.

[28] The prior seizure of Purtell's computers is a relevant consideration for Agent Anderson under Wis. Admin. Code § DOC 328.21(7)(h), which provides that "[p]rior seizures of contraband from the client" is pertinent in establishing reasonable grounds for searching a probationer's property. This is an especially germane fact here, given that the search of the seized computer's contents is at issue.

[29] Purtell's comments to the group home coordinator relate to three factors probation agents are instructed to consider prior to searching a probationer's property: "[t]he observations of staff members," Wis. Admin. Code § DOC 328.21(7)(a), "[t]he experience of a staff member with that client," § DOC 328.21(7)(g), and "the need to verify compliance with the rules of supervision and state and federal law," § DOC 328.21(7)(i).

23

believing Purtell's computers contained contraband,[30] such as correspondence with underage girls[31] or additional Myspace

---

[30] We read Agent Anderson's testimony in the suppression hearing as providing an ample foundation for believing the contents of Purtell's computers contained contraband. However, to the extent Agent Anderson's subjective intent to search Purtell's computer was motivated by concern he might possess still images of animal cruelty or mutilation, which was the basis for the court of appeals' decision, we conclude that stated objective by Agent Anderson does not impact the lawfulness of the search. The Supreme Court has repeatedly held that a police officer's motive does not invalidate "objectively justifiable behavior under the Fourth Amendment." Whren v. United States, 517 U.S. 806, 813 (1996) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.") (internal quotation marks omitted). See also State v. Sykes, 2005 WI 48, ¶29, 279 Wis. 2d 742, 695 N.W.2d 277 (holding the actual motivation of an officer does not determine the constitutionality of a stop).

[31] The dissent argues that "correspondence with underage girls" is not contraband under the terms of Purtell's probation. Dissent, ¶53. Perhaps the dissent overlooks the terms of Purtell's probation, which clearly provide that Purtell is prohibited from having any unsupervised contact with children.

24

accounts.[32]  In  addition,  Agent  Anderson  was  justified  in ascertaining  the  extent  of  Purtell's  probation  violation  by determining  whether  he  had  used  the  computer  in  addition  to possessing  it,  and  if  so,  the  degree  of  his  use.   Accordingly,

---

We  take  issue  with  the  dissent's  constrictive interpretation  of  "item"  under  the  statutory  definition  of contraband,  Wis.  Admin.  Code § DOC 328.21.   We   fail to see a meaningful  difference  between  a  probation  officer  having reasonable  grounds  to  believe  property  contains  a  tangible "item"  establishing  illegal  conduct  and  reasonable  grounds  to believe  property  contains  intangible  evidence  of  illegal conduct.   Under  the  dissent's  unduly  narrow  interpretation  of the  relevant  statutes,  a  probation  officer  would  not  have reasonable  grounds  to  search  a  probationer's  property  even  if  he or  she  was  certain  the  property  contained  evidence  of  the probationer's  non-compliance  with  the  terms  of  his  or  her probation.   Such  an  interpretation  is  contrary  to  the  dual purposes  of  the  Fourth  Amendment  "special  needs"  exception,  in that  it  would  run  the  risk  of  endangering  the  public  and  state employees,  as  well  as  hinder  the  rehabilitation  of  probationers.

[32] Under  the  terms  of  his  probation,  Purtell  was  "prohibited from  maintaining  a  Myspace.com  account."   The  dissent  objects that  "[t]his  condition  addresses  an  action  rather  than possession  of  an  item.   A  prohibited  action  does  not  fall  within the  definition  of  contraband."   Dissent, ¶54.   If  possession  of an  account——whether  it  be  a  social  media  account,  a  bank account,  a  web  page,  or  a  line  of  credit——is  prohibited  by  an individual's  probationary  terms,  violation  of  that  term  surely constitutes  the  possession  of  "contraband."   The  dissent's characterization  of  social  media  accounts  fails  to  embrace  the reality  of  our  increasingly  digitized  modern  era.   Simply because  an  "account"  cannot  be  held  in  one's  hand,  does  not  mean it  does  not  exist.

The  dissent  also  argues  that  Agent  Anderson  did  not  need  to search  Purtell's  computer  because  she  "could  check  his  Myspace activity  'separately  because  she  had  his  password  and  had  done that  on  her  own  without  the  computers.'"   Id.   This  fails  to account  for  the  possibility  that  Purtell  had  multiple  Myspace accounts  that  had  not  been  disclosed  to  his  probation  officer and  would  be  viewable  in  his  computer's  web  history.

we conclude Agent Anderson's warrantless search of Purtell's computer complied with Wis. Admin. Code § DOC 328.21(3)(a) and did not violate Purtell's Fourth Amendment rights.

## IV. CONCLUSION

¶33 We hold the circuit court properly denied Purtell's motion to suppress. A probation agent's search of a probationer's property satisfies the reasonableness requirement of the Fourth Amendment if the probation agent has "reasonable grounds" to believe the probationer's property contains contraband. Griffin, 483 U.S. at 874. The record demonstrates that the probation agent had reasonable grounds to believe Purtell's computer, which Purtell knowingly possessed in violation of the conditions of his probation, contained contraband. Accordingly, we hold the probation search of the contents of Purtell's computer did not violate the Fourth Amendment to the United States Constitution or Article I, Section 11 of the Wisconsin Constitution and reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

26

¶34 ANN WALSH BRADLEY, J. *(dissenting).* The State of Wisconsin seeks review of an unpublished decision of the court of appeals that reversed the defendant's conviction. In reinstating the defendant's conviction, the majority rides two analytical horses.

¶35 In one, the majority frames an analysis to suggest that because the computer was lawfully seized as contraband, the contents of the computer can be searched without a warrant. Majority op., ¶¶28-29. This brief discussion, set forth in a mere two paragraphs, is short on legal analysis but striking in the length of its legal reach.

¶36 In its other analytical approach, the majority concludes that the record demonstrates that the agent had reasonable grounds to believe the computer contained contraband. Majority op., ¶20. In order to reach this conclusion, the majority relies on prohibited actions, rather than the possession of prohibited items. It fails to recognize that "actions" do not fall within the definition of "contraband."

¶37 Like the unanimous court of appeals, I determine that the search of the contents of the computer was not supported by reasonable grounds to believe that the computer contained contraband. Additionally, I conclude that a lawful seizure of a computer as contraband does not give license to search its contents without a warrant. Accordingly, I respectfully dissent.

I

1

¶38   At issue in this case is a probation agent's warrantless search of a probationer's computer. Purtell argues that although his computers were lawfully seized as contraband, Agent Anderson's search of the contents of one of the computers constituted an independent, governmental search that violated his Fourth Amendment privacy interests. In its first conclusion, the majority determines that because the computer was lawfully seized as contraband, its contents could be searched without a warrant.

¶39 The analysis in support of this conclusion is set forth in a mere two paragraphs. At the outset, the majority opines that "it is difficult to imagine a scenario where a probation agent would lack reasonable grounds to search an item the probationer is explicitly prohibited from possessing." Id., ¶28. It ends the analysis with a conjecture and abrupt conclusion: if there "would ever conceivably" be such a scenario, it is not this case. Id., ¶30.

¶40   It is unclear why the majority finds it so "difficult to imagine such a scenario" and that it would be virtually inconceivable. One need look only to one of the most legally debated issues of the day: whether the search of the contents of a legally seized computer is constitutionally permissible without a warrant.

¶41 The United States Supreme Court recently weighed in on this issue in the context of the search of the contents of a cellphone. Riley v. California, 573 U.S. ___, 134 S. Ct. 2473 (2014). In a decision that is being heralded as an important

2

statement on privacy rights in the digital age, the unanimous court concluded that "officers must generally secure a warrant before conducting" a search of data on cell phones. Id. at 2485.

¶42 Although Riley was decided in the context of a search of a cell phone, the court observed that the "term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone." Id. at 2489.[1] Furthermore, "the possible intrusion on privacy is not limited in the same way" as a search of other physical objects, given their "immense storage capacity" which has "several interrelated consequences for privacy." Id. at 2489.

¶43 The fact that the primacy of these privacy rights has been recently reaffirmed, even for those with reduced privacy interests, makes the majority's decision all the more troubling. As Justice Roberts explained, Fourth Amendment rights apply also to those with diminished privacy rights. The existence of "diminished privacy interests":

> does not mean that the Fourth Amendment falls out of the picture entirely. Not every search "is acceptable

---

[1] Likewise, the Seventh Circuit has acknowledged that cellphones are the equivalent of a computer. United States v. Flores-Lopez, 670 F.3d 803, 805 (7th Cir. 2012) ("Judges are becoming aware that a computer (and remember that a modern cell phone is a computer) is not just another purse or address book. . . . computers hold so much personal and sensitive information touching on many private aspects of life. . . . [T]here is a far greater potential for the 'intermingling' of documents and a consequent invasion of privacy when police execute a search for evidence on a computer.").

3

> solely because a person is in custody." To the contrary, when "privacy-related concerns are weighty enough" a "search may require a warrant, notwithstanding the diminished expectations of privacy of the arrestee."

Id. at 2488 (citations omitted).

¶44 Regardless of whether the majority's analysis is hampered by its self-proclaimed difficulty in imagination or some other impediment, it is surprising that the majority gives the issue such short shrift.

¶45 It bears noting that all parties agree that the search of Purtell's residence (the group home) was permissible. The agent had reason to believe, based on communication with the group home, that Purtell possessed computers in violation of his rules of probation. Computers were the contraband, and computers were seized. The focus of this inquiry is not whether there were reasonable grounds to search the residence or seize the computers, but whether there were independent grounds to search the contents of one of the computers without a warrant.

¶46 The majority glosses over this analytical distinction, despite our precedent establishing that under the Fourth Amendment, each warrantless search must be analyzed separately. State v. Carroll, 2010 WI 8, ¶16, 322 Wis. 2d 299, 778 N.W.2d 1 ("[W]e assess the legality under the Fourth Amendment of each warrantless search or seizure that produced the evidence.").[2]

---

[2] This framework is applicable even though a different Fourth Amendment standard applies to searches of probationers in Wisconsin. See State v. Griffin, 131 Wis. 2d 41, 57, 388 N.W. 2d 535 (1986), aff'd, 483 U.S. 868 (1987) ("Though a probationer has a diminished expectation of privacy, he still has privacy rights that must be respected.").

4

¶47 For example, in State v. Sobczak, 2013 WI 52, ¶30, 347 Wis. 2d 724, 833 N.W.2d 59, the court determined that although a third party's consent provided constitutional authority for a warrantless entry into a home, a separate analysis was needed to determine whether that third party consent allowed for a search of a laptop in the home. The court explained that "[t]o validate the search of an object within a home on consent, the government must satisfy the same requirements as apply to consent to enter." Id., ¶31.

¶48 This concept is also illustrated by Carroll. In Carroll, a police officer handcuffed Carroll after a high-speed chase, and then grabbed a cell phone that Carroll had dropped. 322 Wis. 2d 299, ¶¶5-6. While the officer had the phone, it rang, and the officer answered. The caller made a request to purchase cocaine. The officer also browsed through the contents of the phone, including the phone's image gallery. On appeal, this court addressed the question of whether the officer's warrantless search of the phone's image gallery was constitutional. Id., ¶2. The court determined that even though the seizure of the phone and subsequent phone calls that the officer answered were constitutionally permissible, browsing through the phone's image gallery was improper. Id., ¶33. These cases demonstrate that a separate Fourth Amendment analysis is required to determine if a lawfully seized item can be searched without a warrant.

¶49 Due to the personal nature of the data contained on a computer and the weighty privacy concerns inherent in a search

of that data, it is particularly important that a court conduct a separate analysis to determine if there are reasonable grounds to justify the search. By ignoring precedent and suggesting that once property is seized it can be searched, the majority greatly reduces not only the privacy rights of probationers, but the privacy rights of the millions of people who own cellphones, computers, and similar electronic devices.

II

¶50 Although the majority ultimately conducts an analysis of whether there were reasonable grounds to search the contents of the computer, after suggesting one is not necessary, its analysis is unconvincing. The majority concludes that the probation agent in this case had "reasonable grounds for believing Purtell's computers contained contraband, such as correspondence with underage girls or additional Myspace accounts." Majority op., ¶32. In reaching this conclusion, the majority fails to take into account the definition of the word "contraband."

¶51 Wisconsin probation regulations permit a probation agent to search a probationer's property "if there are reasonable grounds to believe that the quarters or property contain contraband." Wis. Admin. Code § DOC 328.21 (Dec. 2006). "Contraband" is defined as "[a]ny item which the client may not possess under the rules or conditions of the client's supervision; or . . . any item whose possession is forbidden by law." Wis. Admin. Code § DOC 328.21.

6

¶52 The majority lists the relevant conditions of Purtell's supervision as follows:

- He could not purchase, possess, nor use a computer, software, hardware, nor a modem without prior agent approval;

- he was prohibited from maintaining a Myspace.com account;

- he was prohibited from having any contact with animals; and

- he was prohibited from having any unsupervised contact with children.

Majority op., ¶6. The only item that these conditions prohibit Purtell from possessing is a computer.

¶53 The majority's suggestion that the computer could contain "correspondence with underage girls" appears related to Agent Anderson's testimony that Purtell's Myspace page and personal papers indicated he was attempting to start a relationship with a fifteen-year-old girl. Id., ¶¶6-7. However, this is not contraband. Although evidence of contact with teenage girls could be circumstantial evidence of a probation violation, it is not "an item which the client may not possess under the rules or conditions of probation" or may not possess under the law.

¶54 The other items the majority suggests could be contraband on Purtell's computer are "other Myspace accounts." Id., ¶32. This is unpersuasive for two reasons. First, as the circuit court noted, Agent Anderson could check his Myspace activity "separately because she had his password and had done that on her own without the computers." Second, it is far from

7

clear that a Myspace.com account is "an _item_ which the client may not possess under the rules or conditions of probation." Wis. Admin. Code § DOC 328.21(3) (emphasis supplied). It appears from the conditions of his probation that Purtell was prohibited from "maintaining a Myspace.com account." This condition addresses an action rather than possession of an item. A prohibited action does not fall within the definition of contraband.

¶55 Accordingly, the majority's assertions are disconnected from Purtell's actual conditions of supervision, and its reliance on actions that are outside the definition of contraband cannot provide a legal basis for the warrantless search. Contrary to the majority, I conclude that the warrantless search of Purtell's computer after it had been seized was unreasonable because Agent Anderson did not have reasonable grounds to believe that it contained contraband.

III

¶56 In sum, I conclude that the warrantless search of Purtell's computer violated his privacy rights under the Fourth Amendment of the Constitution. The majority's analysis suggests that any item seized can be searched and presents an erroneous understanding of what constitutes contraband.

¶57 Because I disagree with the majority's conclusion that there were reasonable grounds to believe that Purtell's computer contained contraband and with its assertion that the lawful seizure of a computer gives license to search its contents, I respectfully dissent.

8

¶58  I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.