COURT OF APPEALS
DECISION
DATED AND FILED

August 27, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP141-CR**

Cir. Ct. No. 2022CT657

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICHAEL R. METON,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Winnebago County: MICHAEL D. RUST, Judge. *Affirmed*.

¶1 NEUBAUER, P.J.[1] Michael R. Meton challenges his judgment of conviction for operating a motor vehicle with a prohibited alcohol concentration,

_____

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

second offense, contrary to WIS. STAT. § 346.63(1)(b).  He argues that the circuit court erred in declining to suppress the results of a blood draw obtained by the police after they administered a preliminary breath test in violation of WIS. STAT. § 343.303.  Because the police had independent grounds apart from the breath test result to seek the blood draw, suppression of the blood draw result was not required.  This court affirms.

## BACKGROUND

¶2      In December 2022, the State charged Meton with operating a motor vehicle while under the influence, second offense.  The State later filed an amended complaint to include an additional count of operating with a prohibited alcohol concentration, second offense.  The charges, and Meton's suppression motion, arose out of the following facts.

¶3      On December 24, 2022, Officer Nicholas Erickson of the Winnebago County Sheriff's Department received a report of a reckless driver in Winchester.  The report stated that a black truck nearly collided head-on with the reporting party, passed Antlers sports bar, and then backed up and drove into its parking lot.  When Erickson arrived in the area, he observed a truck matching the report's description in the parking lot.  According to Erickson's report, the truck's engine was running and in drive, the brake lights were active, and Meton was seated in the driver's seat "and appeared to be passed out."

¶4      When Erickson knocked on the truck's windows, Meton did not immediately wake up.  At that time, emergency services were dispatched. Eventually, Erickson was able to wake Meton up.  When Meton opened his door, Erickson "immediately detected the odor of an intoxicant" coming from the vehicle.  In speaking with Erickson, Meton admitted that he had been drinking that

evening. Erickson also observed that Meton's eyes were glassy and bloodshot and that his speech was slurred.

¶5 Based on these observations, Erickson administered field sobriety tests and observed several clues of intoxication. Erickson then administered a preliminary breath test (PBT), which indicated a blood alcohol level above the legal limit. Erickson placed Meton under arrest and read the Informing the Accused form to him, after which he consented to chemical testing of his blood.

¶6 Meton filed a pretrial motion to suppress, arguing that Erickson violated WIS. STAT. § 343.303 and the Fourth Amendment by administering the PBT without first asking Meton to submit to the test. Meton argued that § 343.303 requires an officer to "request" that a person "provide a sample of his or her breath for a preliminary breath screening test" and that Erickson failed to request the test because he simply placed the testing device in front of Meton's face and said, "Deep breath and blow for me," thereby making it "appear to Mr. Meton that he was obligated to submit to a PBT[.]" In addition to violating the statute, Meton argued that Erickson's conduct constituted an unreasonable seizure of his breath in violation of the Fourth Amendment and article 1, section 11 of the Wisconsin Constitution, and that "all evidence gathered subsequent to" the PBT result should be suppressed as the tainted fruit of the PBT.

¶7 The circuit court held an evidentiary hearing on Meton's motion in January 2024. The parties agreed that, in lieu of officer testimony, the court could

rely on Erickson's bodycam video in making its factual findings.[2] The court granted Meton's motion in part, finding that Erickson had failed to request that Meton submit to the PBT and excluding the results from that test. However, the court declined to suppress all subsequent evidence, including the results from the blood draw, concluding that the independent source doctrine precluded application of the exclusionary rule. Specifically, the court concluded that there was "probable cause … to believe [Meton] was operating [a] motor vehicle while intoxicated" even without the PBT because Erickson found Meton "asleep in the car[,]" "the vehicle was still in drive," Meton was difficult to arouse from sleep, Erickson smelled a "strong odor of intoxicants" when Meton opened the door, and Meton admitted to drinking that evening and to driving.

¶8    In January 2025, Meton pled no contest and was convicted of operating with a prohibited alcohol concentration, second offense. Meton appeals, asserting that the circuit court erred when it declined to suppress all evidence obtained subsequent to the PBT.

## DISCUSSION

¶9    "In reviewing a motion to suppress, we uphold the circuit court's findings of fact unless they are clearly erroneous, and review the application of constitutional principles to those facts de novo." *State v. Grady*, 2009 WI 47, ¶13, 317 Wis. 2d 344, 766 N.W.2d 729.

---

[2] Although the circuit court indicated in its oral ruling that it had reviewed the video, the video was not included in the appellate record that was transmitted to this court. Thus, the facts relayed herein are derived from the statement of facts in Erickson's appellate brief, which the State agrees is "sufficient," and from the court's oral ruling.

¶10 The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect against "unreasonable searches and seizures." U.S. CONST. amend. IV; WIS. CONST. art. I, § 11.[3] Evidence obtained in violation of the Fourth Amendment is generally inadmissible in circuit court proceedings under the exclusionary rule. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The exclusionary rule can apply to both evidence discovered during an unlawful search or seizure and evidence discovered only because of what the police learned from the unlawful activity, also referred to as "fruit of the poisonous tree." *State v. Knapp*, 2005 WI 127, ¶24, 285 Wis. 2d 86, 700 N.W.2d 899. Broadly speaking, this rule "prohibit[s] the use of any secondary evidence which is the product of or which owes its discovery to illegal government activity." *Id.* (citation omitted).

¶11 The independent source doctrine is "an exception to the exclusionary rule" that "allows for the admissibility of evidence or information tainted by an illegal evidence-gathering activity when the State otherwise acquires the same information … by lawful means." *State v. Van Linn*, 2022 WI 16, ¶12, 401 Wis. 2d 1, 971 N.W.2d 478. The "doctrine applies when the State has a separate reason to seek the challenged evidence apart from the knowledge it gains from an unlawful [seizure]." *Id.*, ¶14. If a "later, lawful seizure is genuinely independent of an earlier, tainted one … there is no reason why the independent source doctrine should not apply." *State v. Carroll*, 2010 WI 8, ¶44, 322 Wis. 2d 299, 778 N.W.2d 1 (citation omitted). The independent source doctrine "derives from

---

[3] Wisconsin courts "normally interpret [a]rticle I, § 11 consistent with the United States Supreme Court's interpretation of the Fourth Amendment." *State v. Coffee*, 2020 WI 53, ¶21 n.5, 391 Wis. 2d 831, 943 N.W.2d 845.

the principle that '[w]hen the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.'" *Id.* (quoting *Murray v. United States*, 487 U.S. 533, 537 (1988) (alteration in original)).

¶12 Meton contends that the circuit court erred when it allowed Meton's blood test result into evidence and that it should have been excluded as fruit of the unlawful PBT. Meton argues that a PBT not only "assist[s] a law enforcement officer in making [a] probable cause determination, [but] also serves an additional function in assisting the officer in determining *what form of testing* will subsequently be sought." Meton reasons that, if field sobriety tests "indicate impairment," but a "low" PBT result is subsequently obtained, an officer "is likely to suspect that substances *other than* ethanol are present" and "will likely choose to request a blood specimen from the accused rather than a breath test in order to confirm [these] suspicions." Thus, due to the "*direct* impact" that the PBT result had upon the subsequent investigation, Meton argues that application of the fruit of the poisonous tree doctrine to Meton's blood test result is "unavoidable" and that the court erred in not suppressing it.

¶13 This argument is without factual support. Meton does not direct this court to any facts in evidence which suggest that the result of the PBT had any impact on Erickson's decision to seek a blood draw. Additionally, there are no facts suggesting that Erickson's administering of the PBT impacted Meton's voluntary consent to the blood draw.

¶14 In arguing this point, Meton appears to rely entirely on the text of WIS. STAT. § 343.303, which provides that the "result of this preliminary breath screening test may be used by the law enforcement officer for the purpose of

6

deciding whether or not the person shall be arrested … and whether or not to require or request chemical tests." However, as this court indicated in ***County of Dane v. Sharpee***, "[t]he legislature's repeated use of the word 'may' in the statute indicates … that the [PBT] is not … determinative of the issue of probable cause to arrest for driving while intoxicated." 154 Wis. 2d 515, 519, 453 N.W.2d 508 (Ct. App. 1990). Similarly, although a PBT *may* be considered by a law enforcement officer in deciding to seek a blood draw, nothing in the statute requires a properly administered PBT before a blood draw may be requested. And, as noted above, no testimony from Erickson or other evidence indicates that he requested a blood draw because of the PBT result.

¶15 Once Erickson placed Meton under arrest for OWI, he was authorized to seek a blood draw under WIS. STAT. § 343.305(3)(a). Erickson had probable cause to arrest Meton based on his reported reckless driving, that his car was running, not in park and he was initially unresponsive, along with Meton's slurred speech, glassy eyes, admission of drinking, and performance on field sobriety tests. Those facts provided "a separate reason," apart from the PBT result, to seek the blood draw. *See **Van Linn***, 401 Wis. 2d 1, ¶14. Accordingly, the circuit court correctly determined that suppression of the blood draw was not required because independent grounds apart from the PBT existed for Erickson to request the blood draw.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.